IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SLATE ROCK CONSTRUCTION, COMPANY, LTD., | : : Case No. 2:10-CV-1031 |
| Plaintiff, | : : |
| v. | : JUDGE ALGENON L. MARBLEY : |
| ADMIRAL INSURANCE CO., et al., | : MAGISTRATE JUDGE DEAVERS : |
| Defendants. | : : |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on a number of motions. They include the following: the Motions to Dismiss for Lack of Personal Jurisdiction of Defendant Jack Bonus Insurance, Inc.'s (Dkt. 159) and Defendant The Brants Company (Dkt.171); the Motions to Dismiss for Failure to State a Claim by Jack Bonus, The Brants Company, and Marsh USA, Inc. (Dkt. 117); the Motions to Transfer Venue by Defendants Admiral Insurance Company, First Specialty Insurance Company, Penn National Security Insurance, Fireman's Insurance Company of Washington, Maryland Casualty Insurance Company, Donegal Mutual Insurance Company, Mutual Benefit Insurance Company, and General Accident Insurance, Transportation Insurance Company, Valley Forge Insurance Company (Dkt. 167), as well as Motions to Join the Motion to Transfer Venue by Defendants Federal Mutual Insurance Company (Dkt. 169), Zurich American Insurance Company and Zurich Commercial Insurance (Dkt. 191).

1

## II. BACKGROUND

Plaintiff Slate Rock was the general contractor for the construction of three apartment projects in Allegheny County, Pennsylvania. The owners of each of the projects sued Slate Rock in Allegheny County, Pennsylvania for alleged construction defects. In turn, Slate Rock filed third-party actions in Allegheny County, Pennsylvania asserting claims against twelve of its subcontractors. Each subcontract required the subcontractor to defend, indemnify, and hold harmless Slate Rock from any liability arising from the subcontractor's performance. Additionally, each required the subcontractor to acquire commercial general liability insurance for the project and name Slate Rock as an "additional insured" under those policies. The subcontractors were then to file the certificates of insurance with Slate Rock to document that Slate Rock had been given such status. Slate Rock relied upon these certificates in the construction of the apartment projects, and did not purchase separate insurance to cover each subcontractor's work.

Slate Rock brought the case *sub judice* alleging that it tendered the defense and any indemnification obligations relating to the Allegheny County lawsuits. The insurers, however, failed to defend or indemnify Slate Rock. Slate Rock seeks a declaratory judgment that the subcontractors and the insurers are required to defend and indemnify Slate Rock. In the alternative, it asserts claims of negligent misrepresentation and promissory estoppel against the insurance agencies and brokers that issued certificates of insurance at the request of the subcontractors.

### III. MOTIONS

### A. PERSONAL JURISDICTION

### 1. STANDARD OF REVIEW

Jack Bonus and Brants have filed motions to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of personal jurisdiction, however, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted). The plaintiff can make this prima facie showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.' " *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. Significantly, the Court is not to weigh the controverting assertions of the party seeking dismissal. *CompuServe*, 89 F.3d at 1262 (citing Theunissen, 935 F.2d at 1459). This refusal to weigh the defendants' controverting assertions is necessary to prevent non-resident defendants from avoiding jurisdiction simply by filing an

affidavit that denies all jurisdictional facts. *Compuserve*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).

### 2. LAW AND ANALYSIS

#### a. Introduction

A federal court sitting in a diversity matter can exercise personal jurisdiction over a defendant if jurisdiction is "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 369 (6th Cir. 2006) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002)).

#### b. Ohio's Long Arm Statute

Pursuant to Ohio's long-arm statute, a court may properly exercise personal jurisdiction over a non-resident defendant who is "[t]ransacting any business in this state." Ohio Rev.Code § 2307.382(A)(1). "Transact" is interpreted in Ohio as meaning "the carrying on or prosecution of business negotiations . . . and may involve business negotiations which have been either wholly or partly brought to a conclusion." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (Ohio 1990).[1] This Court may exercise jurisdiction over someone who directly transacts business in Ohio or over someone who transacts business by an agent in Ohio. Ohio Rev.Code § 2307.382(A).

In order to determine whether a non-resident defendant transacted business in Ohio within the meaning of Ohio's long-arm statute, courts have considered two factors. *Indus.*

---

[1] The Supreme Court of Ohio has indicated that Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Genesis Ins. Co. v. Alfi*, 425 F.Supp.2d 876, 894 (S.D.Ohio 2006) (citing *Kentucky Oaks*, 559 N.E.2d at 480).

*Fiberglass Specialities, Inc. v. Alsco Indus. Prods., Inc.*, No. 3:08-cv-0351, 2009 WL 982805, at *3-4 (S.D.Ohio April 13, 2009); *U.S. v. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994). First, the court may consider whether the non-resident defendant initiated the business dealing. *Id*. at *3 (citing *Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 at *9 (S.D.Ohio Mar.16, 2007)). This is, however, just one factor to be considered, and the determination is not always dependent on who initiates the contact. *Id.* (citing *Military Supply, Inc. v. Reynosa Constr., Inc.*, No. 19326, 2000 WL 109783, at *3 n. 3 (Ohio Ct.App. Jan. 26, 2000)).

Second, the Court may consider whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio. *Id.* at *4 (citing *Shaker Constr. Group, LLC v. Schilling*, No. 1:08cv278, 2008 WL 4346777, at *3 (S.D.Ohio Sept.18, 2008)). If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio, provided there is "some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state." *Shaker*, 2008 WL 4346777 at *3.

Looking to the first factor, "the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state." *Indus. Fiberglass Specialities, Inc.*, at *3 (citing *Benjamin v. KPMG Barbados*, No. 03AP-1276, 2005 Ohio App. LEXIS 1860 at *P48, 2005 WL 995589 (Ohio Ct. App. Apr. 28, 2005)). In this case, both Jack Bonus and Brants issued Certificates of Insurance to Slate Rock at the request of their clients, Mito Insulation and All American Builders respectively, and mailed the Certificates to Slate Rock in Ohio.[2] While Jack Bonus and Brants mailed the

---

[2]A certificate of insurance is a document issued by an insurance broker that verifies the existence of insurance coverage for the listed companies or individuals.

5

Certificates to Ohio, they did so at the request of a third party, and thus this factor is inconclusive.

Considering the second factor, an agreement that creates a continuing obligation that connects the non-resident defendant to Ohio or has terms that affect Ohio is sufficient to confer personal jurisdiction. *See, e.g., Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (Ohio 1990) (holding that nonresident lessee was "transacting any business" in the state where it negotiated, and through the course of dealing became obligated, to make payments to its lessor in Ohio); *U.S. Sprint Commc'ns Co. Ltd P'ship*, 624 N.E.2d at 1052 (holding, in a lawsuit to collect unpaid long-distance phone charges, that the defendant transacted business in Ohio by using U.S. Sprint long distance to conduct business in Ohio and to take orders from its Ohio independent distributors for goods to be sold in Ohio). Here, the Certificates indicated that Slate Rock was an additional insured on both Mito Insulation's and All American Builders' insurance policy. In essence, Jack Bonus and Brants agreed to provide a continuing service to an Ohio corporation. That corporation, Slate Rock, relied on the representations in the Certificates in its construction projects. In sum, the act of adding an Ohio company to an insurance policy for a designated period of time created a continuing obligation that bound the non-resident defendants to the state. *See ALTA Analytics, Inc. v. Muussi*, 75 F.Supp. 773, 779 (S.D. Ohio 1999) (finding that "transacting business" means that: (1) the "necessary nexus" exists between the defendant's actions and the claims at issue; and (2) the cause of action arises from the contract or agreement) (citing *Berning v. BBC, Inc.*, 575 F. Supp. 1354, 1357 (S.D. Ohio 1983)). Accordingly, the facts indicate that Jack Bonus and Brants have transacted business in Ohio sufficient to meet the statutory requirement set forth in Ohio's Long Arm statute.

### c. Due Process

In evaluating whether personal jurisdiction complies with due process, the Court must determine whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "'traditional notions of fair play and substantial justice.'" *Bird*, 289 F.3d at 872 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Sixth Circuit has adopted a three-part test for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable."  *S. Mach. Co. v. Mohasco*, 401 F.2d 374, 381 (6th Cir. 1968).  As discussed below, the Court finds that all three requirements are satisfied in this case.

### i. Purposeful Availment

One's acts become purposeful if one should have reasonably foreseen that a transaction would have consequences in the forum state.  *Id.* at 383.  Thus, "[t]his purposeful availment requirement ensures that a defendant will not be hailed into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation marks and citations omitted).  For example, when "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio."  *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998); *see also Burnshire Dev., LLC v. Cliffs*

*Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006) (holding that the Ohio "transacting any business" standard is coextensive with the purposeful availment prong of constitutional analysis). Due to the Defendants' transacting no business in Ohio and continuing obligations to Slate Rock in Ohio, Jack Bonus and Brants reasonably should have foreseen that their actions would have consequences in Ohio. They have thus purposefully availed themselves of the privilege of acting in Ohio.

While a single act is at issue in this case, it is well-established that the single act of a defendant directed at the forum state can be sufficient to confer personal jurisdiction so long as that act gives rise to the asserted claim. *See McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957). In this case, the Defendants reached beyond their home states and created continuing obligations to Slate Rock, an Ohio company. Slate Rock relied on the Defendants' representation in pursuing its business. Thus, it is reasonable to require Jack Bonus and Brants to submit to litigation in this forum.

### ii. Arise from Activities in Forum State

The second due process requirement is that the cause of action must arise from the defendant's activities in the forum state. *S. Mach. Co.,* 401 F.2d at 381. To meet this requirement, a plaintiff must establish at least a "causal connection" between the defendant's activities in the forum state and the harm to the plaintiff. *Neogen*, 282 F.3d at 892. Where, as here, "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir.1994)). Here, Slate Rock's allegations of negligent misrepresentation and promissory

8

estoppel arise out of Defendants' provision of services to it in Ohio. As a result, the second due process requirement is met.

### iii. Substantial Enough Connection to Make Jurisdiction Reasonable

The final due process requirement is that there be a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *S. Mach. Co.*, 401 F.2d at 381. When the first two prongs of the due process inquiry have been satisfied, Ohio courts will "presume the specific assertion of personal jurisdiction was proper." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). When making this reasonableness inquiry, courts are to consider several factors, "including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *CompuServe*, 89 F.3d at 1268 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).

As Jack Bonus is based in Pennsylvania and Brants in Texas, they will no doubt be burdened by defending this lawsuit in Ohio. Nevertheless, when the Defendants added Slate Rock as an additional insured on the policies and mailed the Certificates to Ohio, they assumed this obligation. *See CompuServe*, 89 F.3d at 1268 ("It may be burdensome for [the defendant] to defend a suit in Ohio, but he knew when he entered into [business] with [the plaintiff] that he was making a connection with Ohio, and presumably he hoped that connection would work to his benefit.").

Ohio also has an interest in protecting its citizens. *See id.* ("Ohio has a legitimate interest in protecting the business interests of its citizens."); *CompuServe*, 89 F.3d at 1268 ("Ohio has a strong interest in resolving a dispute involving an Ohio company."). While Pennsylvania and Texas may have an interest in adjudicating claims involving their corporations, "this interest

9

does not override the other factors suggesting that personal jurisdiction in Ohio is reasonable." *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002).

Given the presumption of reasonableness that arises from the Court's finding of purposeful availment and harm arising out of Defendants' contacts with Ohio, and the fact that the Court must "consider[ ] the pleadings and affidavits in a light most favorable to [the plaintiff]," *CompuServe*, 89 F.3d at 1268, the Court finds that the Defendants have substantial enough connections with Ohio to make personal jurisdiction reasonable. All three requirements of due process are therefore met.

Accordingly, this Court's exercise of personal jurisdiction over Jack Bonus and Brants comports with both Ohio law and due process. The Court has personal jurisdiction over these defendants, and the motions to dismiss for lack of personal jurisdiction are **DENIED**.

## B. VENUE

This matter is before the Court on the motion of various Defendants to transfer venue pursuant to 28 U.S.C. § 1404 (Dkt. 167).  The Defendants who filed the initial motion include: General Accident Insurance Company, Mutual Benefits Insurance Company, First Speciality Insurance Corporation, Penn National Insurance Company, Fireman's Insurance Company of Washington, Donegal Mutual Insurance Company, Transportation Insurance Company, Valley Forge Insurance Company, and Admiral Insurance Company.  Several other Defendants have joined the motion, they include: Federal Mutual Insurance Company (Dkt. 169), Zurich American Insurance Company and Zurich Commercial Insurance (Dkt. 191).  In addition, two Defendants, G.B.L. Construction (Dkt. 209) and Burns & Scalo Roofing Co. (Dkt. 211), have joined Plaintiff in opposition to the motion.

## 1. STANDARD OF REVIEW

The Defendants bring their Motion to Transfer pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding a § 1404(a) motion, a district court "has broad discretion to grant or deny" the motion. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quoting *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). The moving party bears the burden of showing the need to transfer venue. *Jamhour v. Scottsdale, Ins. Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002).

In ruling on a Section 1404(a) motion, the Court need not limit itself to the three statutory factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Rather, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id*. at 879 (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters*, § 3847 (2d ed. 1986)).

While there are no set factors that the Court must examine, courts have generally examined a host of private and public factors protected by the language of Section 1404(a):

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the

11

fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (internal citations omitted).

## 2. LAW AND ANALYSIS

### 1. Introduction

Defendants argue that this action should be transferred to the Western District of Pennsylvannia. The determination of whether an action may be transferred pursuant to § 1404(a) is a two-step inquiry. First, the Court must determine if venue is proper in the proposed transferee court. *Sky Techs. Partners, LLC v. Midwest Research Institute*, 125 F.Supp.2d 286, 291 (S.D. Ohio 2000). Second, the Court must balance the private and public factors in order to determine whether transfer is appropriate. *Id.*

### 2. Step One: Whether Transferee Venue is Proper

Under the first step, courts consider three factors to determine whether the action "might have been brought" in the alternate forum: (1) the Court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court. *Id.* Slate Rock does not dispute that the United States District Court for the Western District of Pennsylvania would have subject matter jurisdiction over this diversity action, nor that the Insurer-Defendants would be subject to service of process in that court.

Slate Rock, however, does dispute the Defendants' assertion that venue would be proper in Pennsylvania. Under 28 U.S.C. § 1391, a diversity action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

12

First, it is clear that (a)(1) is not an option because the Defendants reside in different states. Second, the feasibility of venue based on (a)(2) is disputed. Plaintiff argues that this is a declaratory judgment action about duties owed to an Ohio company, and the consequences of Defendants' alleged failure to honor those duties. Defendants conceive of the case on a much larger scale, and argue that this is a case about construction projects in Pennsylvania. This Court must decide only the discrete issues before it, and thus this Court agrees with the Plaintiff; this is a case about the obligations owed to an Ohio company, and the harm suffered by that company in Ohio. Nevertheless, even though the claims arose in Ohio, a substantial part of the relevant events occurred in Pennsylvania because several of the Defendants have their principal place of business in Pennsylvania and conduct business there. Accordingly, venue under (a)(2) is appropriate, and the Defendants have satisfied step one.

### 3. Step Two: Balancing Private and Public Factors

Once the court has determined that venue is proper in both fora, it moves on to step two. Under the second step of the venue analysis, the court must balance the relevant private and public factors. The general principles relating to a transfer of venue under 28 U.S.C. § 1404(a) have been extensively discussed in various Court of Appeals and District Court decisions within the Sixth Circuit. The purposes of transferring a case from one federal district to another, where venue is proper in each, are to permit access to proof with greater ease, to allow witnesses to attend a trial, to enhance enforceability of any judgment rendered, and otherwise to permit a transfer when to do so would further the goal of a fair and efficient trial and remove any obstacles thereto. *Holiday Rambler Corp. v. American Motors Corp.*, 254 F.Supp. 137 (W.D. Mich. 1966). Providing for a change of venue allows the Court to prevent unnecessary waste of

time, energy, and money, and to protect witnesses and the public from unnecessary inconvenience and expense.  *Rowe v. Chrysler Corp.*, 520 F.Supp. 15 (E.D. Mich. 1981).

### a. Private Factors

Courts have considered a variety of private factors in determining whether a transfer of venue is appropriate.  These include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879-80 (internal citations omitted).  These factors will be discussed more extensively below.

### i. Plaintiff's Forum Preference

When balancing those various factors, the Court does not start with the assumption that the case should proceed in whichever forum is slightly more advantageous to the parties or the witnesses.  Rather, it has long been held that the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. § 1404(a) clearly favor a change of venue. *Sun Oil Co. v. Lederle*, 199 F.2d 423 (6th Cir. 1952)*; International Union of Electrical Radio and Machine Workers v. United Electrical, Radio and Machine Workers of America*, 192 F.2d 847 (6th Cir. 1951); *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951); *Central Investment Corp. v. Mutual Leasing Associates, Inc.*, 523 F.Supp. 74 (S.D. Ohio 1981); *see also U.S. v. Cinemark USA, Inc.*, 66 F.Supp.2d 881 (N.D. Ohio 1999).

Slate Rock has chosen to litigate this case in its home state of Ohio, and that choice is

given substantial deference.  Defendants assert that the Court should not consider Plaintiffs' choice of forum because Slate Rock has ceased business operations and "exists in name and legal form only."  Even if a company has ceased business operations, it still may have outstanding debts or obligations that need to be settled before the company winds up.  It is not clear to the Court, and Defendants cite no legal authority in support, why a company in such a position is not entitled to the same deference as any other company.  Further, Defendants argue that the Plaintiff's choice should have minimal value because "none of the conduct complained of occurred in the forum selected by the plaintiff."  *City of Columbus v. Hotels.com, L.P.*, 2007 WL 2029037, at *8 (S.D. Ohio July 10, 2007).  As discussed above, however, this case is a declaratory judgment action about the rights and injuries of an Ohio company, and not a case about activities in Pennsylvania.  Accordingly, this Court will award substantial weight to Plaintiff's choice of forum.

### ii. Defendant's Forum Preference

There are thirty-three defendants in this case.  Nine of the Insurer-Defendants filed this motion to transfer venue; four Defendants have joined the motion.  Two of the Defendants have joined Plaintiff in opposing the motion.  The remaining eighteen Defendants have neither joined nor opposed the motion to transfer, and thus it may be assumed that they are comfortable with this action remaining in the Southern District of Ohio.   As the Defendants are divided in their choice of preference, this factor is inconclusive.

### iii. Convenience of Parties

The fourth factor, which is explicitly mentioned in § 1404(a), is the convenience of the parties.  Typically, of course, where several fora are available in which to try a case, some inconvenience to one or more parties will exist no matter which forum is chosen.  Consequently,

if a change of venue serves merely to shift the inconvenience from the defendants to the plaintiff, a change of venue is improper. *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.*, 316 F.Supp. 1350 (E.D. Mich.1970). Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue. *Hartford Accident & Indemnity Co. v. Dalgarno Transportation, Inc.*, 618 F.Supp. 1450 (S.D.Miss. 1985). Rather, the defendant must show a specific hardship involved in transporting documents to the plaintiff's chosen district, *see AMF, Inc. v. Computer Automation, Inc.*, 532 F.Supp. 1335 (S.D.Ohio 1982); *Richards v. Upjohn Co.*, 406 F.Supp. 405 (E.D.Mich. 1976), and must also show that witnesses (usually third party witnesses, rather than employees of the defendants) are unwilling to attend a trial in that forum. *See Gdovin v. Catawba Rental Co.*, 596 F.Supp. 1325, 1327 (N.D.Ohio 1984); *Weltmann v. Fletcher*, 431 F.Supp. 448, 451 n. 3 (N.D.Ohio 1976).

In this case, Defendants have made generalized assertions that it would be convenient to transfer this case to Pennsylvania. They argue that relevant documents and possible witnesses, such as the Defendants' current and former personnel and non-party witnesses, are located in Pennsylvania. They have not identified particular witnesses that will be inconvenienced, or explained why the contracts at issue cannot be mailed, faxed, or emailed to the Southern District of Ohio. Furthermore, it seems unlikely that extensive factual discovery will be necessary in this type of declaratory judgment action. Accordingly, the Defendants have not met their burden of showing that transfer is necessary to avoid or mitigate particular hardships that will develop in their defense of this action.

In sum, none of these private factors strongly favors a change in venue. As discussed above, although "a plaintiff's choice of forum should be given weight when deciding whether to

grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir.1998). Nevertheless, unless it can be said that, balancing all appropriate factors, plaintiff's choice of a forum is "clearly . . . inconvenient," a change of venue should not be ordered. *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 568 (10th Cir.1978). As the Defendants have not met this burden, the private factors suggest that transferring venue is unnecessary in this case. This does not end the inquiry, however, because the Court must also consider and balance the public factors at stake.

### b. Public Factors

Courts must also consider the public interest when deciding whether to transfer venue. In making this determination, courts use a number of factors, including:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80 (internal citations omitted).

### i. Enforceability of Judgment, Practical Considerations, & Relative Interest in Litigation

A number of the public factors are inconclusive. Both the Southern District of Ohio and the Western District of Pennsylvania could enforce a declaratory judgment against the Defendants. Both have an interest in the outcome of this litigation because citizens of both states will be affected. As far as these practical considerations are concerned, neither state seems to have a materially greater interest in the determination of the case than any other.

### ii. Choice of Law

In a transfer analysis, the applicable state law is a relevant factor. Defendants assert that Pennsylvania law applies to this litigation because the contracts at issue contain a Pennsylvania

17

choice of law clause.[3]  In a diversity case, a federal district court "is obligated to apply the choice of law rules of the state in which it sits."  *Security Ins. Co. v. Kevin Tucker & Assoc.*, 64 F.3d 1001, 1005 (6th Cir. 1995); *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir.), *cert den.*, 498 U.S. 941 (1990).  Thus, the Court must look to Ohio choice-of-law rules.  For contractual disputes, Ohio has adopted the § 187 of the Restatement (Second) of Conflict of Laws.  *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d at 923.  Section 187 provides that the parties are bound by a contractual choice of law clause unless: (a) the chosen state has no substantial relationship to the parties or the transaction; or (b) application of the law of the chosen state will be contrary to the fundamental policy of the state which has a materially greater interest in the outcome of the litigation.

Neither exception applies in this case, and thus it appears that Pennsylvania law will likely govern the interpretation of the contracts at stake due to the choice of law clause.  First, as explained above, both Ohio and Pennsylvania have a stake in the outcome of this litigation.  Thus, the chosen state—Pennsylvania—has a substantial relationship with the parties and the transactions at issue.  Second, Ohio does not have a materially greater interest in the determination of this litigation.  While it is interested in seeing the rights of its companies and citizens protected, Pennsylvania shares this interest, and thus neither could be considered "materially greater."  Thus, the Court finds that such interests are insufficient to determine that Ohio has a "materially greater' interest in the outcome than Pennsylvania.  While this Court could apply Pennsylvania law, this factor suggests that transfer to Pennsylvania is appropriate.

In sum, the main public factor at issue—choice of law—favors a change in venue.  The

---

[3] The clause provides as follows: "This Agreement shall be governed by the law of the State of Pennsylvania and enforceable in a court of appropriate jurisdiction in Allegheny County,

18

moving party has met its burden of showing that both convenience and the interests of justice would be better served by transfer to the Western District of Pennsylvania.

### c. Conclusion

After reviewing and balancing all of the factors, it is clear that Defendants have met their burden of showing why transfer to the Western District of Pennsylvania is appropriate. Even given the fact that the plaintiff's choice of forum is entitled to be given some weight, and perhaps significant weight where, as here, the plaintiff is a resident of the chosen forum, the choice of law component strongly favor a change of venue. Thus, the request to change venue is **GRANTED**.

### C. FAILURE TO STATE A CLAIM

Defendants Jack Bonus, the Brants Company, and Marsh USA filed Motions to Dismiss for Failure to State a Claim. (Dkts. 159, 171, 117.) As this Court has found that this case should be transferred to the Western District of Pennsylvania, it does not consider the merits of these motions at this time.

### IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss for Lack of Personal Jurisdiction are **DENIED**. (Dkts. 159, 171.) The Motions to Transfer Venue are **GRANTED**. (Dkts. 167, 169, 191.) The case is **ORDERED** to be transferred to the Western District of Pennsylvania.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

 **DATED: August 30, 2011**

---

Pennsylvania."